**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

URSULA MAYES; VIDA GUERRA;
SABELLA SHAKE; SARA UNDERWOOD;
CARRIE MINTER; BRENDA LYNN
GEIGER; TARA LEIGH PATRICK a/k/a
CARMEN ELECTRA; JAMILLETTE
GAXIOLA; and JESSICA GOLDEN a/k/a
JESSE GOLDEN,

               Plaintiffs,

     - against -

AAK, INC. and ANDREW NOYES

               Defendants.

Case No.

Plaintiffs URSULA MAYES; VIDA GUERRA; SABELLA SHAKE; SARA

UNDERWOOD; CARRIE MINTER; BRENDA LYNN GEIGER; TARA LEIGH PATRICK

a/k/a CARMEN ELECTRA; JAMILLETTE GAXIOLA; and JESSICA GOLDEN a/k/a JESSE

GOLDEN (collectively, "Plaintiffs"), by and through their undersigned counsel, as and for their

Complaint ("Complaint") against defendants AAK, INC d/b/a RHODE ISLAND DOLLS and

ANDREW NOYES (collectively "Defendants") respectfully allege as follows:

## BACKGROUND

1.     This is an action for damages and injunctive relief relating to Defendants'

misappropriation, alteration, and unauthorized publication and use in advertising of images of

Plaintiffs, each of whom are well-known professional models, to promote their Gentlemen's

club, Rhode Island Dolls located in Woonsocket, Rhode Island ("Rhode Island Dolls" or the

"Dolls").

2.     As detailed below, Defendants' misappropriation and unauthorized use of

Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) violation of

- 1 -

section 43 of the Lanham Act, 28 U.S.C. § 1125(a)(1), which prohibits both false or misleading representations of fact in commercial advertising and the false or misleading use of a person's image for commercial purposes; b) violation of each Plaintiff's common law right of privacy as pertains to Defendants' appropriation of their likeness; c) violation of Rhode Island Gen. Law 1956, § 9-1-28 *et seq.* based on Defendants' willful and unauthorized use of each Plaintiff's image for advertising purposes;  e) defamation; and f) various common law torts, including conversion.

3.      In addition to the actual, punitive and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendants from using their Images to promote any Dolls, via any medium.

## JURISDICTION & VENUE

4.       This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under, *inter alia*, the Lanham Act, 28 U.S.C. § 1125(a)(1), and jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

5.      As set forth immediately below, Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

6.      According to publicly available records, defendant AAK, INC is a corporation formed under the laws of the state of Rhode Island, with its principal place of business located at 579 Front Street Woonsocket, RI 02895. AAK, INC operates Rhode Island Dolls, which is located at 579 Front Street Woonsocket, RI 02895.

7.      Venue is proper in the United States District Court for the District of Rhode Island because Woonsocket, Rhode Island is Defendants' principal place of business.

8.      A significant portion of the alleged causes of action arose and accrued in

Woonsocket, Rhode Island and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in Woonsocket, Rhode Island.

## PARTIES

*Plaintiffs*

9.      Plaintiff Ursula Mayes ("Mayes") is a well-known professional model, and a resident of Orange County, California.

10.      Plaintiff Vida Guerra ("Guerra") is a well-known professional model, and a resident of Los Angeles County, California.

11.      Sabella Shake ("Shake") is a well-known professional model, and a resident of Los Angeles County, California.

12.      Sara Underwood ("Underwood") is a well-known professional model, and a resident of Multnomah County, Oregon.

13.      Carrie Minter ("Minter") is a well-known professional model, and a resident of Los Angeles County, California.

14.      Brenda Lynn Geiger ("Geiger") is a well-known professional model, and a resident of Onondaga County, New York.

15.      Tara Leigh Patrick a/k/a Carmen Electra ("Electra") is a well-known professional model, and a resident of Los Angeles County, California.

16.      Jamillette Gaxiola ("Gaxiola") is a well-known professional model, and a resident of Clark County, Nevada.

17.      Jessica Golden a/k/a Jesse Golden ("Golden") is a well-known professional model, and a resident of Los Angeles County, California.

- 3 -

*Defendants*

18.      According to publicly available records, defendant AAK, INC is formed under the laws of the state of Rhode Island.  During times relevant to this action, AAK, INC. operated Rhode Island Dolls in Woonsocket, Rhode Island.

19.      According to publicly available records, and upon information and belief, Andrew Noyes, in his capacity as principal, owner and/or CEO of AAK, INC. maintained operational control over Rhode Island Dolls, including all advertising relating thereto.

## FACTUAL ALLEGATIONS

20.      As set forth immediately below, each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services.

21.      Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical in order to maximize their earning potential, book modeling contracts, and establish each of their individual brands.  In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

22.      Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by one or more of the Defendants in order to make it appear that they worked at, endorsed or were otherwise associated or affiliated with Rhode Island Dolls.

23.      In the case of every Plaintiff, such appearance was false.

24.      Moreover, in every case this misappropriation occurred without any Plaintiff's knowledge, consent or authorization, at no point did any Plaintiff ever receive any remuneration for Defendants' improper and illegal use of their Images, and Defendants' improper and illegal

- 4 -

use of Plaintiffs' Images have caused each Plaintiff to suffer substantial damages.

25.     Further, in certain cases Defendants misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market herself to potential clients, grow her fan base, and build and maintain her brand.

***Plaintiffs' Backgrounds and Careers***

26.     Ursula Mayes is a model whose career started when her photos won first place in prestigious photography awards and a spread in *Maxim* magazine. She is well known as a "suitcase model #5" from the hit game show *Deal or No Deal*. Mayes has appeared on *Minute To Win It*, *The Tonight Show*, and *The Jay Leno Show*. She has also appeared in campaigns for Coronet Diamonds, Volkswagen, Subaru, Bacardi, *Vogue, Elle, In Style, Cosmopolitan*, and *Marie Claire*, to name a few. Mayes is currently a cover model and a star of the game *Juiced 2: Hot Import Nights*. She has a modeling contract under CESD Talent Agency (Los Angeles, California) as well as Brand Model & Talent Agency (Orange County, California), and as an actress with Abstract Talent Agency.

27.     That we know of, Mayes is depicted in the photos in Exhibit "A" to promote Rhode Island Dolls on its Facebook, Instagram, and Twitter pages. These Images were intentionally altered to make it appear that Mayes was either a stripper working at Rhode Island Dolls, that she endorsed the Dolls, or that she was otherwise associated or affiliated with the Dolls.

28.     Mayes has never been employed at Rhode Island Dolls, has never been hired to endorse Rhode Island Dolls, has never been otherwise associated or affiliated with Rhode Island Dolls, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

29.    Vida Guerra is a Cuban model currently living in the United States. Her first national exposure came when she appeared in a lingerie spread for *FHM* in December of 2002 and became "*FHM*'s "Model of the Year" in 2004. Since then, Guerra has been featured in many magazines, including *DUB, Smooth, Escape*, and *Open Your Eyes*. Guerra has made multiple appearances on several Spanish language television programs such as El Gordo y la Flaca (The Fat Guy and The Skinny Girl). She has also became a staple in music videos, appearing in "Shake Ya Tailfeather" performed by Nelly, P. Diddy, and Murphy Lee, from the Bad Boys II soundtrack, 2003, "The New Workout Plan" performed by Kanye West, 2004, and in "Obsession (No Es Amor)" performed by Frankie J ft. Baby Bash, 2005, among others. In addition, Guerra has appeared in a commercial for Burger King's Tender Crisp Bacon Cheddar Ranch, a number of sketches on The Chappelle's Show, and the film, "National Lampoon's Dorm Daze 2." She lent her voice to the video game, "Scarface: The World Is Yours." In 2005, Guerra was voted Number 26 in *FHM*'s "Top 100 Sexiest Females" and has been named the winner of the magazine's "Best Butt Award". She also produced her own swimsuit calendars and accompanying "behind the scenes" DVDs and a 2006 DVD titled, "Vida Guerra: Exposed." She continues to be extremely in demand as a spokeswoman for fitness and fitness equipment, television shows, and movies. Guerra enjoys over 2 million followers across Facebook, Instagram, and Twitter.

30.    That we know of, Guerra is depicted in the photo in Exhibit "B" to promote Rhode Island Dolls on their Facebook page. This Image was intentionally altered to make it appear that Guerra was either a stripper working at Rhode Island Dolls that she endorsed the Dolls, or that she was otherwise associated or affiliated with the Dolls.

31.    Guerra has never been employed at Rhode Island Dolls, has never been hired to endorse Rhode Island Dolls, has never been otherwise associated or affiliated with Rhode Island

Dolls, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

32.    Sabella Shake is a mother, model, and actress who has a bachelors in Business Law from Loyola Marymount. She has modeled for over 12 years for clients such as Affliction Clothing, Chica Rica, Cool Material, Creative Recreation, and *Esquire* magazine. Shake has also appeared in national commercials for Party City, as well as major motion pictures such as 'Shoot Em Up,' 'Apostles,' and 'Date Night.' She currently has over 124,080 social media followers.

33.    That we know of, Shake is depicted in the photos in Exhibit "C" to promote Rhode Island Dolls on their website, Facebook page, and Instagram pages. This Image was intentionally altered to make it appear that Shake was either a stripper working at Rhode Island Dolls that she endorsed the Dolls, or that she was otherwise associated or affiliated with the Dolls.

34.    Shake has never been employed at Rhode Island Dolls, has never been hired to endorse Rhode Island Dolls, has never been otherwise associated or affiliated with Rhode Island Dolls, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

35.    Sara Underwood first appeared in *Playboy* in the pictorial "The Girls of the Pac 10" in the October 2005 issue in which she also graced the cover. Underwood was the Playmate of the Month in the July 2006 issue of the famous men's magazine. She was named Playmate of the Year in 2007. She has been featured in many *Playboy* videos, and not only has she appeared as herself in the films *The House Bunny* (2008) and *Miss March* (2009) but also in episodes reality TV series such as Kendra (2009), *The Girls Next Door* (2005) and *Bridget's Sexiest Beaches* (2009). Underwood has also worked on television as a continuity announcer for the Blackbelt TV cable network and co-hosted hundreds of episodes of G4's "Attack of the Show". She has over 14 million

social media followers.

36.     That we know of, Underwood is depicted in the photo in Exhibit "D" to promote Rhode Island Dolls on its Facebook page. This Image was intentionally altered to make it appear that Underwood was either a stripper working at Rhode Island Dolls that she endorsed the Dolls, or that she was otherwise associated or affiliated with the Dolls.

37.     Underwood has never been employed at Rhode Island Dolls, has never been hired to endorse Rhode Island Dolls, has never been otherwise associated or affiliated with Rhode Island Dolls, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

38.     Carrie Minter is a model and actress who started modeling when she was 15 years old. She has modeled in runway looks for designers such as Valentino and Versace. Carrie has appeared in many magazines, catalog covers, posters, billboards and ads for *GQ, Maxim, Playboy, Seventeen*, Gillette, Ferrari, JC Penny, Music Legs, Linder Sport/Sexy Shapewear, and many other brands and businesses. She has also been featured in several films, music videos, commercials and television series. Carrie has her own business, Carries Pilates Plus, and it is known that she has the hottest studio in all of L.A.

39.     That we know of, Minter is depicted in the photos in Exhibit "E" to promote Rhode Island Dolls on its Twitter and Facebook page. This Image was intentionally altered to make it appear that Minter was either a stripper working at Rhode Island Dolls that she endorsed the Dolls, or that she was otherwise associated or affiliated with the Dolls.

40.     Minter has never been employed at Rhode Island Dolls, has never been hired to endorse Rhode Island Dolls, has never been otherwise associated or affiliated with Rhode Island Dolls, has received no remuneration for Defendants' unauthorized use of her Image, and has

suffered, and will continue to suffer, damages as a result of same.

41.    Brenda Geiger is a professional model and actress who performed with eight-time Grammy nominee rapper Lil Wayne in a music video for two-time Grammy nominee singer Keri Hilson. She is most known for her work in Glamour Magazine and her appearance on "The Howard Stern Show" in a "Miss HTV March" contest. Geiger has appeared in numerous magazines such as *Show, Maxim* and *Raw*, and has modeled for several product campaigns such as Primitive Clothing, where she currently has her own line of custom skateboard decks.

42.    That we know of, Geiger is depicted in the photos in Exhibit "F" to promote Rhode Island Dolls on its Facebook page. This Image was intentionally altered to make it appear that Geiger was either a stripper working at Rhode Island Dolls that she endorsed the Dolls, or that she was otherwise associated or affiliated with the Dolls.

43.    Geiger has never been employed at Rhode Island Dolls, has never been hired to endorse Rhode Island Dolls, has never been otherwise associated or affiliated with Rhode Island Dolls, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

44.    Tara Leigh Patrick a/k/a Carmen Electra is an actress, recording artist, author, and entrepreneur. With an impressive body of work that encompasses dance, television, film, comedy, music, and theatre. Electra is one of Hollywood's most versatile personalities. She attended Cincinnati's School for Creative and Performing Arts. After graduating high school in 1991 Electra moved to Los Angeles and caught the eye of Prince, who produced her self-titled album on his Paisley Park record label. Electra ventured into acting with regular roles on *Baywatch* and MTV's *Singled Out.* She has since made the move to the big screen with starring roles in blockbuster hits including *Scary Movie*, *Dirty Love*, *Cheaper by the Dozen 2*, and *Meet the Spartans*. Electra

attained the role as the face of MAX Factor following in the famous footsteps of Marilyn Monroe and Jaclyn Smith. In 2006, Electra became a published author with the release of her book, "How to be Sexy." She also formed the dance troupe, The Bombshells, who perform nationwide, and released the fitness DVD series, *Carmen Electra's Aerobic Striptease*. In 2009, Electra appeared on stage in MGM Grand Vegas' Crazy Horse Burlesque Show to sold-out audiences during the summer and fall of the year. In 2010, she starred in the film, *Oy Vey, My Son is Gay* and *2-Headed Shark Attack*, alongside Charlie O'Connell, served as a guest judge on *Britain's Got Talent*, and made reoccurring guest appearances on CW's hit show, *90210*. In November of 2012, Electra released her return-to-music single, "I Like it Loud," featuring Grammy-nominated producer Bill Hamel. The single, which delves into Electra's fun and playful side, marks 20 years since she first burst onto the Hollywood circuit. "I Like It Loud" hit the #25 spot on Billboard's Dance Club Play Chart, the sultry songstress was on fire, turning up the heat for audiences, including *The Wendy Williams Show*, Cyndi Lauper's *Home For The Holidays* charity event, the notorious White Party in Palm Springs, and the Life Ball in Vienna. In June of 2014, Electra released 'Werq', which was followed by the release of the music video. She also released her hottest single yet, 'Around The World'. As a "Thank You" to her global supporters. In November 2015, Electra performed a few of her hits in Russia at the "Favourites of the Moon" festival. During that same month, Electra launched her perfume, "Carmen Electra", with FragranceNet. Electra can most recently be seen as the host of WEtv's new reality docuseries "Ex Isle" which premiered January 8th, 2016. She has over 2.9 million Facebook followers, 1 million Instagram followers, and 364 thousand Twitter followers.

45.     That we know of, Electra is depicted in the photo in Exhibit "G" to promote Rhode Island Dolls on its Facebook page. This Image was intentionally altered to make it appear that

Electra was either a stripper working at Rhode Island Dolls that she endorsed the Dolls, or that she was otherwise associated or affiliated with the Dolls.

46.     Electra has never been employed at Rhode Island Dolls, has never been hired to endorse Rhode Island Dolls, has never been otherwise associated or affiliated with Rhode Island Dolls, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

47.     Jamillette Gaxiola began her career as a teenager. She was spotted by a modeling agent at a fast-food restaurant, and after some initial resistance, the teenage beauty decided to try modeling. She became Miss Cuba at the age of 18, and quickly became popular among fashion designers and magazines. She is active in a number of social and charitable causes, and one of her personal missions has been to help young women deal with self-esteem issues. In a small period of time, she has possessed the work ethic and dedication to transition between Beauty, Fashion, TV, and is now a Sports Personality representing the UFC. She has worked for designer brands such as Reebok, Hurley, Guess Jeans, Victoria Secret, Nike, MAC Cosmetics, Roberto Cavalli, Naeem Khan, Paul Marciano, Fendi, Saks Fifth Avenue and Niemen Marcus. She is also the current face of UFC. Her beauty pageants consist of Miss Cuba Grand International, and Miss Cuba International. Jamillette's magazine highlights include those of *GQ Magazine, Maxim Australia, Open Magazine,* and *Esquire.*

48.     That we know of, Gaxiola is depicted in the photo in Exhibit "H" to promote Rhode Island Dolls on its Instagram page. This Image was intentionally altered to make it appear that Gaxiola was either a stripper working at Rhode Island Dolls that she endorsed the Dolls, or that she was otherwise associated or affiliated with the Dolls.

49.     Gaxiola has never been employed at Rhode Island Dolls, has never been hired to

endorse Rhode Island Dolls, has never been otherwise associated or affiliated with Rhode Island Dolls, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

50.     Jessica Golden a/k/a Jesse Golden is a successful model and businesswoman. She became a supermodel with high profile clients that included Abercrombie & Fitch, Victoria Secret, Lucy Sport, Coca-Cola, GAP, and Nike. She has graced the covers of magazines like New York Times, Fitness, New Port Beach, Yoga International, and many others. Jesse shares her secrets on her own blog and also writes for many other magazines and sites. She's currently a Holistic Health Practitioner and is a certified Hatha yoga teacher. She has her own fitness and yoga brand and products. Working for many notable fashion brands, dozens of commercials, television and film; Jesse continues to expand her career through life experiences

51.     That we know of, Golden is depicted in the photos in Exhibit "I" to promote Rhode Island Dolls on its Instagram and Facebook pages. This Image was intentionally altered to make it appear that Golden was either a stripper working at Rhode Island Dolls that she endorsed the Dolls, or that she was otherwise associated or affiliated with the Dolls.

52.     Golden has never been employed at Rhode Island Dolls, has never been hired to endorse Rhode Island Dolls, has never been otherwise associated or affiliated with Rhode Island Dolls, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

***Defendants' Business***

53.     Upon information and belief, Defendants operated, during the relevant time period, Rhode Island Dolls, where they engaged in the business of selling alcohol and food in an atmosphere where nude and/or semi-nude women entertain the business' clientele.

54.    Upon information and belief, and in furtherance of its promotion their promotion of Rhode Island Dolls, Defendants own, operate and control Rhode Island Dolls' social media accounts, including its Facebook, Twitter, and Instagram accounts.

55.    Defendants used Rhode Island Dolls' Facebook, Twitter, and Instagram accounts to promote Rhode Island Dolls, and to attract patrons thereto.

56.    Defendants did this for their own commercial and financial benefit.

57.    Defendants have used, advertised, created, printed and distributed the Images of Plaintiffs, as further described and identified above, in order to create the false impression with potential clientele that each Plaintiff either worked as a stripper working at Rhode Island Dolls, that she endorsed the Dolls, or that she was otherwise associated or affiliated with the Dolls.

58.    Defendants used Plaintiffs' Images and created the false impression that they worked at or endorsed Rhode Island Dolls to receive certain benefits therefrom, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; as well as an increase in business revenue, profits, proceeds, and income.

59.    As Defendants were at all times aware, at no point have any of the above-named Plaintiffs ever been affiliated with or employed by Rhode Island Dolls and at no point have any of the Plaintiffs ever endorsed Rhode Island Dolls, or otherwise been affiliated or associated with Rhode Island Dolls.

60.    All of Defendants' activities, including their misappropriation of Plaintiffs' Images, and publication of same, were done without the knowledge or consent of Plaintiffs, and Defendants did not compensate Plaintiffs for their use of their Images.

61.    As such, Plaintiffs have never received any benefit from Defendants' use of their

Images.

*Standard Business Practices in the Modeling Industry*

62.    It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

63.    The fee that a professional model, such as each of the Plaintiffs, will receive is negotiated by her agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) the location where the photo shoot takes place, and the length thereof; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards or posters), known as "usage"; and, d) the length of time (known as the "term") the rights to use the photos will be assigned.  Most licenses to use a model's image are for 1, 2, or 3 year terms; but almost never is there a "lifetime" term.

*Defendants' Misappropriation of Plaintiffs' Images*

64.    As detailed above, Defendants knowingly, and without the prior consent of any of the Plaintiffs, invaded Plaintiffs' privacy by using Plaintiffs' Images for commercial purposes in order to promote Rhode Island Dolls by and through various marketing and promotional mediums including, without limitation, Rhode Island Dolls' website, Twitter, Facebook, and Instagram.

65.    Defendants showcased Plaintiffs' Images on Rhode Island Dolls' social media pages to create the false impression that Plaintiffs worked at Rhode Island Dolls, endorsed, promoted or sponsored same, or were otherwise associated or affiliated with same.

66.    Defendants did so to attract clientele to Rhode Island Dolls, promote Rhode Island Dolls, and thereby generate revenue for Defendants.

67.    Defendants were aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at and/or endorsed Rhode Island Dolls.

68.    Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

69.    In addition, Plaintiffs allege that any improper or unauthorized use of their Images substantially injures their careers.

70.    This is especially so insofar as each of Plaintiffs' Images have been associated with a strip club, and the implication of Defendants' use of Plaintiffs' Images is that they are strippers, endorse a strip club, or are otherwise associated or affiliated with a strip club.

71.    At no point were any of the Plaintiffs ever affiliated with Rhode Island Dolls, or Defendants.

72.    Each of Plaintiffs' Images was used without her consent.

73.    At no point was any Plaintiff ever contacted by any Defendant, or any representative of any of the Defendants, to request the use of any of Plaintiffs' Images.

74.    No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

75.    No Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including Rhode Island Dolls website, Twitter, Facebook, or Instagram accounts.

76.    By using the Models' image and likeness, Defendants did not use their own advertising idea, and instead used the Models' (or their licensees') advertising ideas to promote their Dolls to the public.

77.    Defendants used Plaintiffs' Images without their consent, and without providing

remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

78.    Upon information and belief, Defendants have taken the foregoing actions with the intent of causing irreparable harm to each of the Plaintiffs.

## FIRST CAUSE OF ACTION
### (Violation of §43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(B): False Advertising)

79.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

80.    The provisions of the Lanham Act, 215 U.S.C. §1125, *et seq.* apply to Defendants, and protect Plaintiffs from the conduct described hereon.

81.    As set forth hereon, each advertisement at issue in this action were false and misleading because no Plaintiff ever worked at Rhode Island Dolls, or agreed to appear in Rhode Island Dolls' advertisements.

82.    Given the false and misleading nature of the advertisements, they had the capacity to deceive consumers and, upon information and belief, did so deceive consumers.

83.    Upon information and belief, said deceptive advertisements had a material effect on the purchasing decisions of consumers who attended Rhode Island Dolls.

84.    Insofar as Defendants' published these false and misleading advertisements on the internet, they had the capacity to affect interstate commerce, and, upon information and belief, did so affect interstate commerce.

85.    Despite the fact that Defendants were at all times aware that the Plaintiffs neither worked at, nor endorsed the Dolls, Defendants nevertheless used Plaintiffs Images in order to mislead potential customers as to Plaintiff's employment at and/or affiliation with the Dolls.

86.    Defendants knew that their use of Plaintiffs' Images would cause consumer

confusion as to Plaintiffs' sponsorship and/or employment at the Dolls.

87.     Upon information and belief, Defendants use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs employment at and/or endorsement of the Dolls, and the goods and services provided by the Dolls.

88.     Due to Defendants unauthorized use of Plaintiffs' Images in order to create a false advertisement prohibited by section 43 of the Lanham Act, Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

## SECOND CAUSE OF ACTION
### (Violation of §43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A): False Association)

89.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

90.     The provisions of the Lanham Act, 215 U.S.C. §1125, *et seq*. apply to Defendants, and protect Plaintiffs from the conduct described hereon.

91.     Defendants used Plaintiffs Images in order, *inter alia*, to create the false impression with the public that Plaintiffs were affiliated, connected, or associated with Rhode Island Dolls, or worked at, sponsored, or approved of Rhode Island Dolls' goods, services or commercial activities.

92.     This was done to promote and attract clientele to Rhode Island Dolls, and thereby generate revenue for the Defendants.

93.     Thus, this was done in furtherance of Defendants' commercial benefit.

94.     Despite the fact that Defendants were at all times aware that the Plaintiffs were neither affiliated, connected or associated with Rhode Island Dolls, nor worked at, sponsored, or approved of Rhode Island Dolls' goods, services or commercial activities, Defendants nevertheless used Plaintiffs Images in order to mislead potential customers as to Plaintiff's

employment at and/or affiliation with Rhode Island Dolls.

95.     Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship, affiliation, connection, association and/or employment at the Dolls.

96.     Upon information and belief, Defendants use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs' employment at and/or endorsement of the Dolls, and the goods and services provided by the Dolls.

97.     Due to Defendants unauthorized use of Plaintiffs' Images in order to create a false endorsement prohibited by section 43 of the Lanham Act, Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

**THIRD CAUSE OF ACTION**
**(Rhode Island Gen. Law § 9-1-28.1 - Right to Privacy)**

98.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

99.     As set forth hereon, each Plaintiff has and had at the time of Defendants' misappropriation a commercial interest in her image, photo, persona and likeness.

100.    Each Plaintiff has a right to not have her likeness appropriated for any purpose without her express consent.

101.    Each Plaintiff likewise has a right to be secure from publicity that reasonably places her in a false light before the public;

102.    Each Plaintiff likewise has a right to be free from publication of a false or fictitious fact which implies an association which does not exist;

103.    As set forth herein, Defendants used each Plaintiff's image and likeness for commercial purposes by using same in Rhode Island Dolls advertising.

104.    Defendants did so without any Plaintiff's consent, written or otherwise.

105.    An association with a Gentlemen's Club like Rhode Island Dolls would be objectionable to the ordinary reasonable person.

106.    Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants' republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

107.    Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product for the benefit of the Defendants.

108.    Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Dolls.

109.    At no point did Defendants ever compensate Plaintiffs for its use of their Images.

110.    No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

111.    In addition to the actual damages suffered by Plaintiffs based on Defendants' violation of this statute, Plaintiffs are entitled to the reasonable attorneys' fees incurred prosecuting this action.

### FOURTH CAUSE OF ACTION
**(Common Law Right of Publicity)**

112.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

113.    As set forth hereon, each Plaintiff has and had at the time of Defendants'

misappropriation a commercial interest in her image, photo, persona and likeness.

114.    Said commercial interest was developed by each Plaintiff through her investment of time, effort and money in her career, image, persona and likeness.

115.    As set forth herein, Defendants used each Plaintiff's image and likeness for commercial purposes by using same in Blush advertising.

116.    Defendants did so without any Plaintiff's consent, written or otherwise.

117.    Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants' republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

118.    Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product.

119.    Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Dolls.

120.    At no point did Defendants ever compensate Plaintiffs for its use of their Images.

121.    No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

122.    In addition, because Defendants' actions in misappropriating Plaintiffs' images and violating their common law right of publicity was willful and outrageous, Plaintiffs are entitled to punitive damages in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
### (Rhode Island Gen. Law § 9-1-28 - Unauthorized use of name, portrait, or picture)

123. Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

124. As set forth hereon, each Plaintiff has and had at the time of Defendants' misappropriation a commercial interest in her image, photo, persona and likeness.

125. Each Plaintiff has a right to not have her likeness appropriated for any purpose without her express consent.

126. Each Plaintiff likewise has a right to be secure from publicity that reasonably places her in a false light before the public;

127. Each Plaintiff likewise has a right to be free from publication of a false or fictitious fact which implies an association which does not exist;

128. As set forth herein, Defendants used each Plaintiff's image and likeness for commercial purposes by using same in Rhode Island Dolls advertising.

129. Defendants did so without any Plaintiff's consent, written or otherwise.

130. Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants' republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

131. Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product.

132. Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or

- 21 -

on any other medium, in order to promote the Dolls.

133. At no point did Defendants ever compensate Plaintiffs for its use of their Images.

134. No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

135. In addition to the actual damages suffered by Plaintiffs based on Defendants' violation of this statute, said damages should be trebled based on Defendants' knowing and willful conduct as described herein.

## SIXTH CAUSE OF ACTION
### (Defamation)

136. Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

137. As detailed throughout this Complaint, Defendants have published altered Images of Plaintiffs in order to promote the Dolls to the general public and potential clientele.

138. Defendants' publication of said Images constitutes a representation that Plaintiffs was either employed by the Dolls, that they endorsed the Dolls, or that they had some affiliation with the Dolls.

139. None of these representations were true.

140. In publishing Plaintiffs' altered Images, it was Defendants' intention to create a false impression to the general public that Plaintiffs were strippers working at the Dolls, or endorsed the Dolls.

141. Defendants were at least negligent in publishing Plaintiffs' Images because they knew, or should have known, that Plaintiffs were not employed by the Dolls, had no affiliation with the Dolls, had not consented to the use of their Images, and had not been compensated for

the use of their Images.

142.    In the alternative, Defendants published the Images of Plaintiffs with actual malice because they knew that Plaintiffs were not employed by the Dolls, had no affiliation with the Dolls, had not consented to the use of their Images, and had not been compensated for the use of their Images.

143.    Despite Defendants' knowledge and awareness of these facts, they nevertheless made the decision to publish Plaintiffs' Images to attract clientele and generate revenue for themselves.

144.    Defendants' publication of Plaintiffs' Images constitutes defamation under Rhode Island law because said publication falsely accuses Plaintiff of having acted in a manner – *i.e.*, working as a stripper and/or endorsing Rhode Island Dolls - which would subject each Plaintiff to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiff of confidence and friendly intercourse in society.

145.    Defendants' publication of Plaintiffs' Images likewise constitutes defamation *per se* under Rhode Island law because said publication would tend to injure each Plaintiff in her trade, business, and profession as a professional model.

146.    This is because any company or brand that sought to hire any of the Plaintiffs as a company or brand representative would be less likely to do so upon learning that she was a professional stripper and/or promoting the Rhode Island Dolls, an inference which Defendants' publication of the Images support.

147.    Defendants' publication of Plaintiffs' Images likewise constitutes defamation *per*

*se* under Rhode Island law because, insofar as said publication falsely portrays each of the Plaintiffs as a stripper, it imputes unchastity to her.

148.   Defendants' publication of Plaintiffs' Image' caused Plaintiffs to suffer damages in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

## SEVENTH CAUSE OF ACTION
### (Negligence and *Respondeat Superior*)

149.   Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

150.   Plaintiffs are further informed and believe and hereon allege that Defendants maintain or should have maintained employee policies and procedures which govern the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the *unauthorized and non-consensual* use of intellectual property, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

151.   Further, Defendants should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

152.   Defendants owed a duty of care to Plaintiffs to ensure that their advertising and promotional materials and practices did not infringe on their property and publicity rights.

153.   Defendants further owed a duty of care to consumers at large to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

154.   Defendants breached their duty of care to both Plaintiffs and consumers by failing

to either adhere to or implement policies and procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

155.   Defendants further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Rhode Island law, were not violated.  Defendants breached their duty of care to Plaintiffs and consumers by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

156.   Defendant's breach was the proximate cause of the harm Plaintiffs suffered when their Images were published without their consent, authorization, and done so in a false, misleading and/or deceptive manner.

157.   As a result of Defendants' negligence, Plaintiffs have suffered damages in an amount to be determined at trial.

### EIGHTH CAUSE OF ACTION
**(Conversion)**

158.   Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

159.   Each Plaintiff is, and at all relevant times were, the exclusive owners of all right, title and interest in their Images, and have property interests thereon.

160.   By the conduct detailed above, Defendants converted Plaintiffs' property rights in their Images for their own use and financial gain Images for its own use and financial gain.

161.   As a result of Defendants' unlawful conversion of Plaintiffs' Images, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial.

## NINTH CAUSE OF ACTION
### (Unjust Enrichment)

162.    Plaintiffs hereby repeat and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

163.    As set forth in detail above, Defendants published Plaintiffs' Images in order to promote the Rhode Island Dolls to the general public and potential clientele.

164.    Defendants' publication was for the purpose of creating a false impression to the general public that Plaintiffs were either strippers working at the Rhode Island Dolls, or endorsed the Rhode Island Dolls.

165.    Defendants' purpose in publishing Plaintiffs' Images was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

166.    Upon information and belief, Defendants did in fact benefit commercially due to their unauthorized use of Plaintiffs' Images.

167.    Defendants have been enriched by their unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendants in attracting clientele to the Rhode Island Dolls.

168.    Plaintiffs have not been compensated for Defendants' commercial exploitation of their Images, and thus any financial benefit which Defendants received due to said exploitation is unjust.

169.    As such, Plaintiffs have been damaged in an amount to be determined at trial.

## TENTH CAUSE OF ACTION
### (Quantum Meruit)

170.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

171.    Plaintiffs are each internationally known models who earn their livings appearing in, *inter alia*, commercials, advertisements, and publications on behalf of companies and brands.

172.    Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

173.    Although Defendants have availed themselves of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs either work at the Rhode Island Dolls, endorse the Rhode Island Dolls, or are otherwise affiliated with the Rhode Island Dolls, Defendants have not compensated Plaintiffs.

174.    Plaintiff is therefore entitled to reasonable compensation for the Rhode Island Dolls' unauthorized use of their Images.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request Judgment in their favor and against Defendants as follows:

(a) For actual damages, in an amount to be determined at trial, relating to Plaintiffs' first through tenth causes of action;

(b) For an order permanently enjoining Defendants from using Plaintiffs' Images to promote the Dolls;

(c) For punitive and/or treble damages, in an amount to be determined at trial, based on Defendants' willful misappropriation of Plaintiffs' publicity and property rights;

(d) For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action pursuant to the Lanham Act, 15 U.S.C.§ 1117 and Rhode Island's statutory right to privacy; and,

(e) For such other and further relief as the Court may deem just and proper.

Dated: November 8, 2021

PLAINTIFFS,

By their Attorneys,


/s/ Paul Sullivan　　_____
Paul Sullivan, #5712
Sullivan Law Offices, PC
33 Broad Street, Suite 302
Providence, RI 02903
Tel: (401) 861-9900
Fax: (401) 861-9977
psullivan@psullivanlaw.com

*and*


　　　　　　　　　　　　_____
John V. Golaszewski *
The Casas Law Firm, PC
1740 Broadway, 15th Floor
New York, New York
T: 646-872-3178
F: 855.220.9626
john@casaslawfirm.com

*Pro Hac Vice Application Forthcoming*